UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
FRANCISCO RODRIGUEZ, and ARISTIDES
ALFREDO DILLATORO,

               Plaintiffs,

               - against -

RIDGE PIZZA INC. d/b/a ALFREDO'S
PIZZERIA, DENNIS D'ONOFRIO and VELIA
D'ONOFRIO,

               Defendants.
-----------------------------------------------------------X

**MEMORANDUM
AND ORDER**

CV 16-00254 (DRH) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.    <u>P<span style="font-variant:small-caps">RELIMINARY</span> S<span style="font-variant:small-caps">TATEMENT</span></u>

       Plaintiffs Francisco Rodriguez ("Rodriguez") and Aristides Alfredo Dillatoro

("Dillatoro") (collectively, "Plaintiffs"), commenced the instant action against Defendants Ridge

Pizza Inc. d/b/a Alfredo's Pizzeria ("Ridge Restaurant"), Dennis D'Onofrio, and Velia

D'Onofrio (collectively, "Defendants"), asserting violations of the Fair Labor Standards Act of

1938, as amended ("FLSA"), the New York Labor Law ("NYLL"), and related provisions of the

New York Code, Rules and Regulations ("NYCRR"). *See generally* Complaint ("Compl.")

[DE 1]. Presently before the Court is Plaintiffs' motion for leave to amend the Complaint.

Specifically, Plaintiff seeks to leave to amend in order to: (1) properly identify the corporate

Defendant; (2) correct the name of one of the individual Defendants; and (3) make minor factual

corrections to the pleadings. *See* Memorandum of Law in Support of Plaintiffs' Motion to

Amend the Complaint ("Pls.' Mem.") [DE 35-1] at 2.

At the outset, the Court notes that Defendants do not object to the first part of the motion regarding the corporate name change from "Ridge Pizza, Inc." to "Ridge Restaurant, Inc." *See* Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Amend ("Defs.' Opp'n.") [DE 36-4] at 2. Therefore, the first part of the motion to amend is GRANTED. However, Defendants do object to the substitution of Philip D'Onofrio as an individual Defendant in the place of currently-named Defendant Velia D'Onofrio. *Id*. at 4. As to Plaintiffs' proposed changes to correct factual inaccuracies, Defendants argue that Plaintiffs are attempting to "salvage their meritless case by changing their pleadings." *Id*. at 5. For the reasons which follow, the remainder of Plaintiffs' motion for leave to amend is also GRANTED.

## II.  BACKGROUND

Since it is undisputed that the instant motion seeks to amend several factual allegations underlying Plaintiffs' claims, the Court summarizes the allegations of the Proposed Amended Complaint ("PAC") [DE 35] and notes where these allegations differ from the allegations of the initial Complaint. In evaluating the merits of the instant motion, the Court accepts the facts of the Proposed Amended Complaint as true, and construes them in the light most favorable to Plaintiffs as the movants. *See, e.g.*, *LaFaro v. N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009); *Matthews v. City of N.Y.*, 889 F. Supp. 2d 418, 425 (E.D.N.Y. 2012); *Alkhatib v. New York Motor Group, LLC*, No. CV 13-2337, 2015 WL 3507340, at *7 (E.D.N.Y. June 3, 2015) (noting that the Court "is required to accept the material facts alleged in the amended [pleading] as true and draw reasonable inferences in the [movant's] favor").

## A.      The Proposed Amended Complaint

Dennis and Philip D'Onofrio are individuals residing in Suffolk County, New York, who "owned and operated" a pizzeria named Ridge Restaurant, Inc.  PAC ¶¶ 14, 16, 19-20.[1]  Plaintiff Rodriguez was employed by Ridge Restaurant from October 2014 to March 2015, and Plaintiff Dillatoro was employed by Ridge Restaurant from September 2014 to April 1, 2015.  *Id.*  ¶¶ 24, 34.[2]  Plaintiffs allege, upon information and belief, that Dennis and Phillip D'Onofrio "had the power to hire and fire the Plaintiffs, supervised and controlled the work and schedules and conditions of their employment, determined the rate and method of pay, and maintained records of their employment."  *Id.*  ¶¶ 17, 21.[3]  Plaintiffs both "worked approximately 72 hours each week" and their "regular work schedule was from 10am to 10pm," six days per week.  *Id.* ¶¶ 25-26, 35-36.  Defendants "tracked [Plaintiffs'] work time through a punch card system."  *Id.* ¶¶ 28, 38.

Plaintiffs assert specific violations of Defendants' alleged duties as an employer, including that Defendants failed to:  pay them "overtime premium for all hours worked in excess of 40 per week," *id.* ¶¶ 29, 39;[4] pay "the spread of hours premium on all days when [Plaintiffs']

---

[1]  The initial Complaint alleges that Velia D'Onofrio, rather than Philip D'Onofrio, "owned and operated Ridge Pizza Inc. d/b/a Alfredo's Pizzeria" with Dennis D'Onofrio.  *See* Compl. ¶¶ 17, 21.

[2]  The initial Complaint alleges Rodriguez was employed by Ridge Restaurant from May 2014 to October 2014.  Compl. ¶39.

[3]  The initial Complaint alleges that Velia D'Onofrio, rather than Philip D'Onofrio, "had the power to hire and fire the Plaintiffs, supervised and controlled the work and schedules and conditions of their employment, determined the rate and method of pay, and maintained records of their employment," with Dennis D'Onofrio.  Compl. ¶¶ 18, 22.

[4]  The initial Complaint alleges that "Defendants failed to pay [Plaintiffs their] overtime premium for hours worked in excess of 40 per week."  Compl. ¶¶ 45, 57.

spread of hours exceeded [ten]," *id.* ¶¶ 31, 41; provide Plaintiffs with wage notices and wage statements "consistent with the requirements of NYLL § 195," *id.* ¶¶ 32-33, 42-43;[5] and "keep accurate records of the hours worked by the Plaintiffs." *Id.* ¶ 46. Plaintiffs also claim that Defendants required them "to punch out at approximately 10 pm, even though they were not done working." *Id.* ¶ 44.[6] Finally, Plaintiffs assert that they lost wages while they waited for tardy managers to open the pizzeria despite Plaintiffs' punctual attendance. *Id.* ¶ 45.[7][8]

### B. Relevant Procedural History

Plaintiffs filed their initial Complaint on January 18, 2016. *See* DE 1. On April 15, 2016, since no Defendant had appeared in the lawsuit, Plaintiffs filed a request for a certificate of default with the Clerk of the Court. *See* DE 12. The Court granted Plaintiffs' request on April 18, 2016. *See* DE 14. Shortly thereafter, on April 27, 2016, both Plaintiffs and Defendants entered into a stipulation vacating the Clerk's entry of default, which the Court "so ordered" on May 12, 2016. *See* Electronic Order of May 12, 2016. Defendants subsequently filed their Answer to the Complaint on May 16, 2016. *See* DE 18.

---

[5] The initial Complaint alleges that the Defendants failed to provide Plaintiffs with wage notices and wage statements, without reference to any statutory provision. *See* Compl. ¶¶ 48-49, 59-60.

[6] The corresponding allegation in the initial Complaint contains an additional sentence, stating the following: "[i]f employees did not punch out by 10pm, they would be penalized for 30 minutes worth of wages for that day." Compl. ¶61.

[7] The corresponding allegation in the initial Complaint is slightly different, stating that "if an employee was late by 5 to 10 minutes, the Defendants would deduct approximately 30 minutes of wages from that employee's wages. If the employee was 15 minutes late, the Defendants would deduct 1 hour of wages from that employee's wages." Compl. ¶62.

[8] The initial Complaint also alleges that Plaintiffs were paid $9.00 per hour, *see* Compl. ¶¶ 40, 51; however, the PAC contains no allegations as to the amount of Plaintiffs' compensation.

This Court conducted an Initial Conference with the parties on January 11, 2017. *See* DE 22. On March 8, 2017, Plaintiff Dillatoro filed a motion for an extension of time to complete discovery. *See* DE 24. The Court granted Plaintiff's motion on March 10, 2017, over Defendants' opposition. *See* DE 25; Electronic Order of March 10, 2017. Defendants then filed a motion for an extension of time to complete discovery on April 19, 2017, DE 26, which the Court also granted. *See* Electronic Order of April 20, 2017. Subsequently, counsel for Plaintiffs requested an extension of time to amend the pleadings, asserting that he had not been provided with information by Defendants sufficient to identify the correct legal name of the corporate Defendant. *See* DE 27. Defendants opposed this motion. *See* DE 28. The Court granted Plaintiffs' motion "solely to the extent that the April 28, 2017 deadline to add parties or amend the pleadings is [ ] extended two weeks from the date of this Order. As such, the deadline to amend the pleadings is hereby extended to May 12, 2017." Electronic Order of April 25, 2017.

On May 11, 2017, Plaintiffs filed a letter to Judge Hurley requesting a pre-motion conference for purposes of filing a motion for leave to amend the Complaint. *See* DE 32. In an Order dated May 15, 2017, this Court pointed out to Plaintiffs that their motion for leave to amend was misdirected to Judge Hurley and that this Court does not require a pre-motion conference for motions seeking leave to amend. *See* Electronic Order of May 15, 2017. Consequently, the Court established a briefing schedule for Plaintiffs' anticipated motion for leave to amend the Complaint. *See id.* On June 23, 2017, in accordance with the briefing schedule, the parties filed their motion papers on ECF. *See* DE 35-37.

C.    **The Parties' Positions**

Plaintiffs seek leave to amend their Complaint to (1) change the name of the corporate Defendant from "Ridge Pizza, Inc.," to "Ridge Restaurant, Inc.;" (2) substitute "Philip

D'Onofrio" for current Defendant "Velia D'Onofrio;" and (3) make certain changes to their allegations regarding the nature of Plaintiffs' employment with Defendants. *See generally* PAC. As to the substitution of Philip D'Onofrio for Velia D'Onofrio, Plaintiffs argue that it was not until Plaintiffs received certain of Defendants' discovery responses on May 3, 2017 that they learned "Velia D'Onofrio is not a principal of Ridge Restaurant, Inc." Pls.' Mem. at 2. Plaintiffs also argue that they "believed that Velia D'Onofrio was the legal name of 'Philip' D'Onofrio. Philip supervised the Plaintiffs, and fired Aristides Dillatoro." *Id*. at 1-2. The motion for leave to amend should be granted, Plaintiffs contend, because there has been no undue delay, bad faith, dilatory motive, or prejudice to Defendants, and because the allegations against Philip D'Onofrio support a viable FLSA claim. *Id*. at 3-4.

As noted earlier, Defendants do not oppose amending the Complaint to include the proper name of the corporate Defendant. However, Defendants do oppose Plaintiffs' attempt to substitute Philip D'Onofrio for Velia D'Onofrio, and what Defendants see as Plaintiffs' attempt to "make substantial changes in the factual allegations underlying the claims." Defs.' Opp'n. at 2. As to the substitution of Philip D'Onofrio for Vela D'Onofrio, Defendants argue that, as their discovery responses indicate, Denis (and not Philip) D'Onofrio made all hiring and firing decisions, controlled hours and conditions, and maintained records. Defs.' Opp'n. at 4. Defendants argue that even if Philip were a proper party, Plaintiffs should have known this at the inception of the action, and their naming of Vela rather than Philip D'Onofrio evidences "both an intent to delay as well as bad faith." *Id.* With respect to amendments to the factual allegations, Defendants argue that "[t]he only conclusion which can be drawn . . . is that when confronted with documentary evidence concerning their employment, plaintiffs are seeking to salvage their

meritless case by changing their pleadings, and, therefore, stories. This is the height of bad faith and should not be permitted." *Id.* at 5.

In their short reply memorandum, Plaintiffs argue that: (1) leave to amend is consistent with the principle that disputes should be resolved on the merits, *see* Plaintiffs' Reply Memorandum ("Pls.' Reply") [DE 37] at 2; (2) denying leave to amend will expose Philip D'Onofrio to a subsequent suit, wasting judicial resources, *id.*; (3) Defendants should be precluded from arguing "bad faith" when they "concealed the name of the correct corporate identity for over a year, despite the fact that Plaintiffs extended the courtesy of vacating the default," *id.* at 2-3; and (4) minor factual amendments are proper and necessary since Defendants paid Plaintiffs in cash and Plaintiffs "had no choice but to rely on their recollection in bringing this case." *Id.* at 3-4.

## III. STANDARD OF REVIEW

Rule 15(a) of the Federal Rules of Civil Procedure provides that in cases where a party cannot amend as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2); *see Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991); *Barber v. Hornbeck Offshore Operators, LLC*, No. 11 Civ. 5520, 2014 WL 1010993, at *5 (E.D.N.Y. Mar. 17, 2014); *M.E.S., Inc. v. Liberty Mut. Sur. Group*, No. 10 Civ. 2798, 2014 WL 46622, at *8 (E.D.N.Y. Jan. 6, 2014). Whether to grant leave to amend is a decision squarely within the district court's discretion. *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 540 (2010) ("[Rule 15(a)] gives a district court discretion to decide whether to grant a motion to amend a pleading before trial."); *MHANY Mgmt. v. Cty. of Nassau*, 843 F. Supp. 2d 287, 340 (E.D.N.Y. 2012) (noting that "it is ultimately within the sound discretion of the court whether to

grant leave to amend").  Significantly, a court "should freely give leave when justice so

requires."  FED. R. CIV. P. 15(a)(2); *Iqbal v. Ashcroft*, 574 F.3d 820, 822 (2d Cir. 2009) (quoting

FED. R. CIV. P. 15(a)(2)); *Grace v. Rosenstock*, 228 F.3d 40, 56 (2d Cir. 2000) (same); *Guideone

Specialty Mut. Ins. Co. v. Hapletah*, No. 05 Civ. 1401, 2006 WL 1455468, at *1 (E.D.N.Y. May

24, 2004) ("[Rule 15(a)] provides for a liberal amendment of pleadings.").  "Amendments are

generally favored because they tend to facilitate a proper decision on the merits."  *MHANY

Mgmt.*, 843 F. Supp. 2d at 340; *Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 302 (E.D.N.Y.

2013) (same) (citing *Sokolski v. Trans Union Corp.*, 178 F.R.D. 393, 396 (E.D.N.Y. 1998)).

The liberal standard established by Rule 15(a) requires only that the movant provide

"colorable grounds" for the relief sought.  *Alkhatib v. New York Motor Group, LLC*, No. CV 13-

2337, 2015 WL 3507340, at *7 (E.D.N.Y. June 3, 2015) ("If the movant has at least colorable

grounds for relief, justice . . . requires that the court grant leave to amend the complaint.")

(quoting *Sokolski*, 178 F.R.D. at 396); *see UMG Recordings, Inc. v. Lindor*, No. CV-05-1095,

2006 WL 3335048, at *2 (E.D.N.Y. Nov. 9, 2006).  However, where a proposed amendment is

clearly frivolous or advances a claim that has no merit, the amendment is considered futile and

will be rejected.  *See UMG*, 2006 WL 3335048, at *2; *see Lucente*, 310 F.3d at 258 ("Where it

appears that granting leave to amend is unlikely to be productive, [ ] it is not an abuse of

discretion to deny leave to amend.") (citation omitted).  "Futility is a determination, as a matter

of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under

Rule 12(b)(6) of the Federal Rules of Civil Procedure."  *Panther Partners, Inc. v. Ikanos

Communications, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012); *see Lotito v. Recovery Associates Inc.*,

No. 13-CV-5833, 2014 WL 4659464, at *9 (E.D.N.Y. Sept. 17, 2014); *Sodhi v. Mercedes Benz

Fin. Servs., USA, LLC*, 957 F. Supp. 2d 252, 255 (E.D.N.Y. 2013) ("A proposed amendment

would be futile when it would not survive a 12(b)(6) motion to dismiss."); *Hunter v. Deutsche Lufthansa AG*, 863 F. Supp. 2d 190, 202 (E.D.N.Y. 2012). It is the opposing party who bears the burden to establish that an amendment would indeed be futile. *See Balk* 2013 WL 6990767, at *5; *Alkhatib*, 2015 WL 3507340, at *7; *Blaskiewicz v. Cty. of Suffolk*, 29 F. Supp. 2d 134, 137-38 (E.D.N.Y. 1998) (citing *Harrison v. NBD Inc.*, 990 F. Supp. 179, 185 (E.D.N.Y. 1988)).

In assessing whether a proposed amendment asserts colorable grounds for relief, a court "is required to adopt the same analysis as applied on a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the [Federal Rules of Civil Procedure]." *UMG*, 2006 WL 3335048, at *2; *Balk*, 2013 WL 6990767, at *5; *Golden Trade, S.r.L. v. Jordache*, 143 F.R.D. 504, 506 (S.D.N.Y. 1992) (recognizing the general rule that in order to determine whether the amended pleading puts forth colorable grounds, the court should apply the standards of Rule 12(b)(6)); *Chan v. Reno*, 916 F. Supp. 1289, 1302 (S.D.N.Y. 1996). Therefore, in deciding whether an amended pleading asserts colorable claims or defenses, the Court "is required to accept the material facts alleged in the amended [pleading] as true and draw reasonable inferences in the [movant's] favor." *Alkhatib*, 2015 WL 3507340, at *7 (quoting *Mendez v. U.S. Nonwovens Corp.*, 2 F. Supp. 3d 442, 451 (E.D.N.Y. 2014)); *see Panther Partners, Inc.*, 681 F.3d at 119 ("In assessing whether the proposed [amended] complaint states a claim, [courts] consider the proposed amendments along with the remainder of the complaint . . . accept as true all non-conclusory factual allegations therein, and draw all reasonable inferences in plaintiff's favor to determine whether the allegations plausibly give rise to an entitlement to relief.").

In performing this analysis, a court is not required to make a final determination on the merits of a proposed claim or defense, but instead, must only "satisfy itself that [the claim or defense] is colorable and not frivolous." *UMG*, 2006 WL 3335048, at *2 (quoting *T & N PLC v.*

*Fred S. James & Co, of New York*, 1991 WL 190581, at *2 (S.D.N.Y. Sept. 16, 1991)).

Therefore, the moving party "is not required to 'establish a probability it would prevail on the

merits in order for the court to grant its motion to amend . . . [i]nstead . . . [movant] is merely

required to assert proposed amendments which are not frivolous on their face.'" *UMG*, 2006

WL 3335048, at *2 (quoting *T & N PLC*, at *2).

Notwithstanding the above, leave to amend a pleading may be denied where there is

"undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure

deficiencies by amendments previously allowed, [or] undue prejudice to the opposing party."

*Balk*, 2013 WL 6990767, at *5; *see Williams v. Citigroup Inc.*, 659 F.3d 208, 213-14 (2d Cir.

2011). To determine what constitutes sufficient prejudice to warrant denial of a party's request

to amend its pleading, "the Court considers whether the amendment would: (i) require the

opponent to expend significant additional resources to conduct discovery and prepare for trial;

(ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiffs from bringing a

timely action in another jurisdiction." *Hernandez v. Immortal Rise, Inc.*, No. 11 CV 4360, 2013

WL 1703529, at *4 (E.D.N.Y. Apr. 19, 2013) (internal quotations omitted); *see Block v. First

Blood Assoc.*, 988 F.2d 344, 350 (2d Cir. 1993); *Kirschenbaum v. Federal Ins. Co.*, 505 B.R.

126, 132 (E.D.N.Y. 2014). The party opposing the motion to amend carries the burden to

establish that one or more of the above factors would cause it substantial prejudice thus

necessitating denial of the motion. *See Kirschenbaum* 505 B.R. at 132; *Alkhatib*, 2015 WL

3507340, at *7; *Golden Trade*, 143 F.R.D. at 506 ("[T]he party opposing the motion [to amend]

must demonstrate that it would be *substantially and unfairly* prejudiced by the amendment.")

(emphasis added).

Further, courts have determined that time, money, and effort expended in defending a lawsuit does not rise to the necessary level of prejudice required to defeat a motion to amend. *See Block*, 988 F.2d at 351 (noting that the time, effort, and money expended fail to rise to the level of "substantial prejudice" necessary to defeat a motion to amend); *Kirschenbaum* 505 B.R. at 132; *S.S. Silverblatt, Inc. v. E. Harlem Pilot Block-Bldg. 1 Hous. Dev. Fund Co., Inc.*, 608 F.2d 28, 43 (2d Cir. 1979) ("[T]he burden of undertaking discovery, which Chemical would have shouldered had the proposed amendment been incorporated . . . hardly amounts to prejudice outweighing the policy of Rule 15(a) in favor of permitting the parties to obtain an adjudication of the merits.").[9]

## IV. DISCUSSION

The Court begins its analysis with an examination of whether Plaintiffs' PAC provides "colorable grounds" for the relief it seeks. The Court will then examine whether there exist any of the factors that, in the presence of a colorable claim for relief, would negate the otherwise liberal Rule 15(a) standard, specifically, "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, [or] undue prejudice to the opposing party." *Balk*, 2013 WL 6990767, at *5.

### A. Futility

#### 1. *Count I: Overtime Wages under the FLSA*

##### a. **Applicable Law**

Plaintiffs' PAC asserts a claim for overtime wages under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* To adequately plead a claim for overtime wages under the FLSA, a

---

[9] The more exacting "good cause" standard pursuant to Rule 16(b) is not applicable in this case since Plaintiffs filed their motion for leave to amend the Complaint on May 11, 2017, a day before the May 12 deadline as extended by the Court in its Electronic Order of April 25, 2017.

plaintiff-employee must allege the following facts regarding his/her relationship with an alleged employer-defendant:  "(1) the Defendant is an enterprise participating in commerce or the production of goods for the purpose of commerce; (2) the Plaintiff is an 'employee' within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA."  *Garcia v. Badyna,* No. 13-CV-4021, 2014 WL 4728287, at *5 (E.D.N.Y. 2014) (citing *Edwards v. Community Enters., Inc.,* 251 F. Supp. 2d 1089, 1098 (D. Conn. 2003); *Tony & Susan Alamo Found. v. Sec. of Labor,* 471 U.S. 290, 295 (1985)).  In addition, a plaintiff-employee "must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."  *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)(1) (requiring that, "for a workweek longer than forty hours," an employee who works "in excess of" forty hours shall be compensated time and a half for the excess hours)).

A Defendant is an "enterprise engaged in commerce or in the production of goods for commerce" if the Defendant is an enterprise that

> has employees engaged in commerce or in the production of goods
> for commerce, or that has employees handling, selling, or otherwise
> working on goods or materials that have been moved in or produced
> for commerce by any person; and . . . whose annual gross volume of
> sales made or business done is not less than $500,000.

*Garcia,* 2014 WL 4728287, at *5 (quoting 29 U.S.C. § 203(s)(1)(A)).  "An individual may be liable as an employer under the FLSA so long as he exercises 'operational control' over the employee in question."  *Garcia*, 2014 WL 4728287, at *5 (citing *Irizarry v. Catsimatidis,* 722 F.3d 99, 110 (2d Cir. 2013)).

With respect to the second element of an FLSA overtime claim, courts examine the "economic realities" of a working relationship to determine whether a plaintiff is an employee

under the FLSA.  *Tackie v. Keff Enter. LLC,* 2014 WL 4626229, at *2 (S.D.N.Y. 2014)

(citing *Irizarry v. Catsimatidis,* 722 F.3d 99, 104-05 (2d Cir. 2013)).  Although no one factor is

dispositive, courts will look to the following factors in examining the economic realities of a

plaintiff's circumstances:

> (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business.

*Tackie,* 2014 WL 4626229, at *2 (citing *Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1058-59

(2d Cir. 1988)).  "The ultimate concern is whether, as a matter of economic reality, the workers

depend upon someone else's business for the opportunity to render service or are in business for

themselves."  *Tackie,* 2014 WL 4626229, at *2 (citing *Brock,* 840 F.2d at 1059).

    With respect to the third element of an FLSA overtime claim, the following categories

are statutorily exempted from the definition of "employee" under the FLSA:  (1) "individual[s]

employed by the Government of the United States," the United States Postal Service, the Postal

Regulatory Commission, and certain "individuals employed by a State, political subdivision, or

agency;" (2) "individual[s] employed by an employer engaged in agriculture" if such individual

is a "member of the employer's immediate family;" and (3) certain individuals who "volunteer[ ]

to perform service for a public agency which is a State, a political subdivision of a State, or an

interstate governmental agency."  29 U.S.C. §§ 203(e) (2)-(4).

### b.    Application to the Proposed Amended Complaint

    Regarding the first element of an FLSA overtime claim (*i.e.*, employer liability),

Plaintiffs' PAC asserts that Ridge Restaurant "has continuously been an employer engaged in an

industry affecting commerce" and "[f]or each of the calendar years 2013, 2014 and 2015 [ ] had

annual gross volume of sales made or business done of $500,000 or more." PAC ¶¶ 9-10. Plaintiffs further allege that Defendants Dennis D'Onofrio and Philip D'Onofrio: (1) "owned and operated Ridge Restaurant, Inc.," *id.* ¶¶ 16, 20; (2) "had the power to hire and fire the Plaintiffs, supervised and controlled the work and schedules and conditions of their employment, determined the rate and method of pay, and maintained records of their employment," *id.* ¶¶ 17, 21; and (3) "exercised [ ] operational control" over the Plaintiffs. *Id.* ¶¶ 18, 22. Based on these allegations, Plaintiffs have adequately pleaded the first element of an FLSA overtime claim – that both the corporate and individual Defendants have employer liability under the FLSA.

The Court finds that these assertions and others regarding the economic realities of Plaintiffs' relationship with Defendants are also sufficient to plausibly state the second element of an FLSA overtime claim, namely, that Plaintiffs' relationship with Defendants is covered by the FLSA such that Plaintiffs were "employees" of Defendants. In addition to the above assertions, Plaintiffs allege that they both "worked approximately 72 hours each week," and that their "regular work schedule was from 10am to 10pm," six days per week. PAC ¶¶ 25-26, 35-36. Defendants also "tracked [Plaintiffs'] work time through a punch card system." *Id.* ¶¶ 28, 38. Moreover, "[t]here is no indication that [Plaintiffs] had any investment in [Ridge Restaurant] or opportunity for profit outside [their] hourly wage," nor is there any "allegation that [Plaintiffs'] work required any special skill." *Tackie,* 2014 WL 4626229, at *3. Additionally, a plausible inference may be raised from the PAC that Plaintiffs were "permanent employees who worked on a weekly basis." *Id.* The Court can also plausibly infer from the facts alleged that Plaintiffs' work was "an integral part of [Defendants'] business." *Id.* at *2. The Court is therefore satisfied that the PAC plausibly states the second element of an FLSA overtime claim

-- that Plaintiffs' employment relationship with Defendants is covered under the FLSA. The Court is also satisfied that there are no allegations to support that Plaintiffs are "exempt" from the definition of "employee" under the FLSA, thereby satisfying the third element of an FLSA claim.

As to the final element of an FLSA overtime claim -- sufficient allegations of 40 hours of work in a given workweek as well as some uncompensated time in excess of 40 hours -- Plaintiffs each allege their regular workweek was 72 hours. PAC ¶¶ 26-27, 36-37. Plaintiffs further allege that Defendants "failed to pay [them their] overtime premium for" the hours worked "in excess of 40 per week." *Id*. ¶¶ 29, 39. This element has therefore been sufficiently pleaded.

Based on the foregoing analysis, and keeping in mind that Plaintiffs are not required to "prove" anything at this juncture, the Court finds that the allegations contained in the PAC are sufficient to state a claim for failure to pay overtime wages, in violation of the FLSA.

### 2. *Count II: Overtime Wages under the NYLL*

#### a. **Applicable Law**

Count II of the PAC asserts a claim for unpaid overtime wages under the New York Labor Law. The NYLL "is the state analogue to the federal FLSA," and, as such, it "echoes the FLSA in compensation provisions regarding overtime and minimum wage requirements." *D'Arpa v. Runway Towing Corp.*, No. 12-CV-1120, 2013 WL 3010810, at *18 (E.D.N.Y. June 18, 2013) (citations omitted). To state a claim for recovery of overtime wages under the NYLL, plaintiffs must sufficiently allege that they were not compensated for hours worked in excess of 40 in a given week, and that "they were 'employees' and that Defendants were 'employers' as

defined by the statute." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 34 (E.D.N.Y. 2015) (citing *Lauria v. Heffernan,* 607 F. Supp. 2d 403, 407-08 (E.D.N.Y. 2009)).

The NYLL definition of 'employer' differs from the FLSA definition in that it "does not require that a Defendant achieve a certain minimum in annual sales or business in order to be subject to the law." *Fermin,* 93 F. Supp. at 34 (citing *Garcia,* 2014 WL 4728287, at *6); N.Y. LAB. LAW § 651(6) (defining employer as "any individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer")). Under the NYLL, "an employee is simply defined as 'any individual employed or permitted to work by an employer in any occupation.'" *Garcia*, 2014 WL 4728287, at *6 (quoting N.Y. LAB. LAW § 651(5)). While a plaintiff's burden in alleging that he/she is an "employee" under the NYLL is similar to the burden a plaintiff must meet under the FLSA, a court's analysis under the NYLL "focuses more on 'the degree of control exercised by the purported employer' over the purported employee, 'as opposed to the economic reality of the situation.'" [10] *Fermin,* 93 F. Supp. 3d at 34 (quoting *Hart v. Rick's Cabaret Int'l., Inc.,* 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013)). Based on the above law, under the NYLL "[a]n employer-employee relationship exists when the evidence demonstrates that the employer exercises control over the results produced by [plaintiff] or the means used to achieve the results." *Hart*, 967 F. Supp. 2d at 925 (quoting *In re Hertz*, 811 N.E. 2d 5, 7 (2004)).

---

[10]  In *Fermin*, the Court noted the decision in *Bynog v. Cipriani Group, Inc.,* 1 N.Y.3d 193, 770 N.Y.S.2d 692, 802 N.E.2d 1090 (2003), "in which the New York Court of Appeals set forth five factors relevant to determining control under the common law test, including whether the worker: '(1) worked at his own convenience; (2) was free to engage in other employment; (3) received fringe benefits; (4) was on the employer's payroll; and (5) was on a fixed schedule.'" Fermin, 93 F. Supp. 3d at 34 (quoting *Bynog,* 1 N.Y.3d at 198, 770 N.Y.S. 2d 692, 802 N.E. 2d at 1090). Although the Court does not provide a detailed treatment of these factors in its opinion, it is satisfied that when applied to the PAC, factors (1), (2), (4), and (5) support a finding that Defendants exercised sufficient control over Plaintiffs for Plaintiffs to qualify as "employees" under the NYLL.

### b.     Application to the Proposed Amended Complaint

The Court finds that for many of the same reasons discussed in the context of the FLSA,

Plaintiffs have sufficiently alleged facts necessary to state a claim for overtime wages under the

NYLL.  Plaintiffs have sufficiently alleged Defendants are "employers" as that term is defined

by the statute.  And as to Plaintiffs' status as "employees," the PAC sufficiently asserts the

"control" required under the NYLL analysis:  Plaintiffs each worked 72 hours per week, with

Defendants "track[ing] [their] time through a punch card system."  PAC ¶¶ 26-28, 36-38.

Plaintiffs further state that Philip and Dennis D'Onofrio "supervised and controlled [their] work

and schedules and conditions of their employment, determined the rate and method of pay, and

maintained records of their employment."  *Id*. ¶¶ 17, 21.  Plaintiffs also allege that they worked

what can only be described as a "fixed" schedule, from "10am to 10pm," six days per week.  *Id*.

¶¶ 25, 35.

Based on these allegations, and Plaintiffs' assertions that they worked in excess of 40

hours per week without appropriate compensation, *see id*. ¶¶ 29-30, 39-40, Plaintiffs have

plausibly stated a claim for unpaid overtime wages under the NYLL.

### 3.     *Count III:  Spread of Hours Pay under the NYCRR*

### a.     Applicable Law

Count III of the PAC asserts a claim under Sections 137 and 146 of Title 12 of the New

York Code, Rules and Regulations, regulations associated with the New York Labor Law.[11]

---

[11]     The Court notes that 12 N.Y.C.R.R. § 137 has been repealed, and "[e]ffective as of
January 1, 2011, the NYLL was amended such that the spread of hours regulations 'apply to all
employees in restaurants and all-year hotels, regardless of a given employee's regular rate of
pay.'"  *Zhen Ming Chen v. New Fresco Tortillas Taco LLC*, No. 15 CIV. 2158, 2015 WL
5710320, at *3 (S.D.N.Y. Sept. 25, 2015), *report and recommendation adopted*, No. 15-CV-

Under the NYCRR, "an employee is entitled to earn an additional hour of pay at the minimum wage for each day during which that employee works more than ten hours." *Piedra v. Ecua Rest., Inc.*, No. 17-CV-3316, 2018 WL 1136039, at \*13 (E.D.N.Y. Jan. 31, 2018), *report and recommendation adopted*, No. 17-CV-3316, 2018 WL 1135652 (E.D.N.Y. Feb. 28, 2018) (citing 12 N.Y.C.R.R. § 146-1.6); *see Andrade v. 168 First Ave Rest. Ltd.*, No. 14 CIV. 8268, 2016 WL 3141567, at \*5 (S.D.N.Y. June 3, 2016), *report and recommendation adopted*, No. 14-CV-8268, 2016 WL 3948101 (S.D.N.Y. July 19, 2016) (quotation omitted). The spread of hours is "the interval between the beginning and end of an employee's workday" and "includes working time plus time off for meals plus intervals off duty." *Andrade*, 2016 WL 3141567, at \*5 (quoting 12 N.Y.C.R.R. § 146-1.6).

### b. Application to the Proposed Amended Complaint

Plaintiffs allege that they "regularly worked a spread of hours that exceeded ten" and did not receive spread of hours pay as required under the NYCRR. PAC ¶¶ 31, 41, 59-60. "While these factual assertions are sparse, this Court cannot say that Plaintiff[s] ha[ve] failed to state a claim for unpaid spread-of-hours compensation as a matter of law." *Gaughan v. Rubenstein,* 261 F. Supp. 3d 390, 424 (S.D.N.Y. 2017) (citing *Humphrey v. Rav Investigative & Sec. Servs. Ltd.*, 169 F. Supp. 3d 489, 498-500 (S.D.N.Y. 2016)). Accordingly, the Court finds that the PAC plausibly states a claim for spread-of-hours pay under 12 N.Y.C.R.R. § 146.

---

2158, 2017 WL 818469 (S.D.N.Y. Mar. 1, 2017) (quoting 12 N.Y.C.R.R. § 146-1.6(d)).

#### 4. *Count IV: Wage Notice Violations under the NYLL*

##### a. **Applicable Law**

Count IV of the PAC asserts a claim for violations of the wage notice provisions, Sections 195 and 198 of the NYLL. "Under the NYLL, at the time of hiring, employers must provide employees with a notice setting forth the employee's 'rate[ ] of pay.'" *Kim v. 551 E. 5th St., LLC,* 133 F. Supp. 3d 654, 661 (S.D.N.Y. 2015) (quoting N.Y. LAB. LAW § 195(1)(a)). The notice must include the following information:

> the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

*Baltierra v. Advantage Pest Control Co.,* 2015 WL 5474093, at * 10 (S.D.N.Y. 2015) (quoting N.Y. LAB. LAW § 195(1)(a)). "For non-exempt employees, the notice must also state 'the regular hourly rate and overtime rate of pay.'" *Canelas v. World Pizza, Inc.,* 2017 WL 1233998, at *11 (S.D.N.Y. 2017) (quoting N.Y. LAB. LAW § 195(1)(a)). Whenever an employer provides such a notice to an employee, "the employer must obtain from the employee 'a signed and dated written acknowledgment, in English and in the primary language of the employee, of receipt of [the] notice,' which the employer must 'preserve and maintain for six years.'" *Canelas*, 2017 WL 1233998, at *11 (quoting N.Y. LAB. LAW § 195(1)(a)). As of February 27, 2015, "[a]ny employee not provided such a notice within ten business days following their first day of employment, 'may recover in a civil action damages of fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars,

19

together with costs and reasonable attorney's fees.'"  *Kim,* 133 F. Supp. 3d at 661 (quoting N.Y. LAB. LAW § 198(1–b)).

### b.    Application to the Proposed Amended Complaint

Plaintiffs Rodriguez and Dillatoro allege that they were hired in October 2014, and March 2015, respectively.  PAC ¶¶ 24, 34.  According to the PAC, Plaintiffs were never furnished with "a wage notice consistent with the requirements of NYLL § 195(1)," *id.* ¶¶ 32, 42, and "Defendants failed to provide the wage notice to Plaintiffs as required by NYLL § 195(1)(a)." *Id.* ¶ 65.   In the Court's view, these allegations are sufficient to plausibly state a claim for Defendants' violation of the wage notice provisions of the NYLL.  *See Mendez v. U.S. Nonwovens Corp.,* 2 F. Supp. 3d 442, 457-58 (E.D.N.Y. 2014) ("The Plaintiffs' Revised Amended Complaint clearly states that no such notice was given to the named Plaintiffs. . . . In the Court's view, this puts the Defendants on notice, without ambiguity, that the Plaintiffs are alleging that the Defendants failed to provide them with a wage notice.").

### 5.    *Count V:  Wage Statement Violations under the NYLL*

### a.    Applicable Law

The final claim Plaintiffs raise is for violations of the wage statement provisions, Sections 195 and 198, of the NYLL.  The Wage Theft Prevention Act ("WTPA") amended Section 195 of the NYLL, and directs employers to provide to employees, with each payment of wages, a statement that includes the following information:

> the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. . . . [T]he statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of

> pay; the number of regular hours worked, and the number of overtime hours worked.

N.Y. LAB. LAW § 195(3). "As of April 9, 2011 and prior to February 27, 2015, '[t]he WTPA entitled employees to recover statutory damages for violations of the wage statement requirement of $100 per work week, not to exceed $2,500.'" *Xochimitl v. Grill of Hell's Kitchen, Inc.,* No. 14-CV-10234, 2016 WL 4704917, at *13 (S.D.N.Y. 2016) (quoting *Baltierra.,* 2015 WL 5474093, at *10); *see* 2010 N.Y. LAWS Ch. 564 § 7, *amending* N.Y. LAB. LAW § 198 (1-d). After February 27, 2015, if an employee is not provided a wage statement as required under Section 195,

> he or she shall recover in a civil action damages of two hundred fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees. The court may also award other relief, including injunctive and declaratory relief, that the court in its discretion deems necessary or appropriate.

N.Y. LAB. LAW § 198 (1-d).

### b.    Application to the Proposed Amended Complaint

Plaintiffs Rodriguez and Dillatoro allege they worked at Ridge Restaurant from October 2014 until March 2015, and September 2014 until April 1, 2015, respectively. PAC ¶¶ 24, 34. Plaintiffs further allege that neither was provided with "a wage statement consistent with the requirements of NYLL § 195(3), PAC ¶¶ 33, 43, and that "Defendants failed to provide the wage statements to Plaintiffs as required by NYLL § 195(3)." *Id.* ¶ 69. These allegations are sufficient to state a plausible claim for violation of the wage statement provision of the NYLL.

### 6.    *Futility:  A Summary*

Based on the above analysis, Plaintiffs' PAC adequately states a colorable claim for relief under each of the five causes of action identified. Consequently, none of the claims asserted in

the PAC are "futile" as a matter of law at this point in the litigation. *See Sodhi*, 957 F. Supp. 2d at 255 ("A proposed amendment would be futile when it would not survive a 12(b)(6) motion to dismiss."); *see also Alkhatib*, *2015* WL 3507340, at *7 ("If the movant has at least colorable grounds for relief, justice . . . requires that the court grant leave to amend the complaint.") (quoting *Sokolski*, 178 F.R.D. at 396); *UMG Recordings, Inc.*, 2006 WL 3335048, at *2; *Fiske*, 802 F. Supp. at 877; *Slavin*, 493 F. Supp. at 33; *Hunter*, 863 F. Supp. 2d at 202.

**B.      Undue Delay, Bad Faith, Dilatory Motive, and Prejudice**

Notwithstanding the futility analysis, leave to amend a pleading may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, [or] undue prejudice to the opposing party." *Balk*, 2013 WL 6990767, at *5; *see Williams*, 659 F.3d at 213-14. "The concepts of delay and undue prejudice are interrelated." *Seemann v. Coastal Environmental Group, Inc.,* 219 F. Supp. 3d 362, 366 (E.D.N.Y. 2016) (quoting *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983)).  To determine what constitutes sufficient prejudice to warrant denial of a party's request to amend its pleading, "the Court considers whether the amendment would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiffs from bringing a timely action in another jurisdiction." *Hernandez*, 2013 WL 1703529, at *4 (quoting *Block*, 988 F.2d at 350 (2d. Cir. 1993)); *see Tokio Marine & Fire Ins. Co. Ltd. v. Employers Ins. Of Wausau,* 786 F.2d 101, 103 (2d. Cir. 1986); *State Teachers Retirement Bd. v. Fluor Corp.,* 654 F.2d 843, 856 (1981).  Importantly, the party opposing the motion to amend carries the burden to establish that one or more of the above factors would cause it substantial prejudice, thus necessitating denial of the motion. *See Kirschenbaum* 505 B.R. at 132; *Alkhatib*,

2015 WL 3507340, at *7; *Golden Trade*, 143 F.R.D. at 506 ("[T]he party opposing the motion [to amend] must demonstrate that it would be *substantially and unfairly* prejudiced by the amendment.") (emphasis added).

As noted previously, Plaintiffs' PAC contains three primary amendments:  (1) the corporate Defendant's name is changed from "Ridge Pizza, Inc." to "Ridge Restaurant, Inc.;" (2) Defendant Philip D'Onofrio is substituted for Velia D'Onofrio; and (3) various factual allegations regarding Plaintiffs' employment have been amended.  *See generally* PAC.  The Court finds that none of these amendments clearly implicate undue delay, bad faith, or dilatory motive on the part of Plaintiffs, nor do these amendments prejudice the Defendants.

With respect to undue delay, bad faith, or dilatory motive, there is no indication that any of these factors motivated Plaintiffs' amendment.  Plaintiffs' argument that they "believed Velia D'Onofrio was the legal name of 'Philip'D'Onofrio," is somewhat questionable.  Pls.' Mem. at 1-2.  This argument seems incompatible with Plaintiffs' subsequent statement that "discovery responses [ ] indicate that Velia D'Onofrio is not a principal of Ridge Restaurant, Inc."  *Id*. at 2. Indeed, this second statement implies that Plaintiffs were aware that Velia and Philip were two different individuals.  Nevertheless, in the Court's view, this somewhat strange argument on Plaintiffs' part does not by itself negate the liberal standard which this Court must abide under Rule 15.

With respect to prejudice, the touchstone of the Rule 15 analysis, Defendants have not provided any information showing that Plaintiffs' proposed amendment would either (i) require Defendants to expend significant additional resources for discovery and trial preparation; or (ii) significantly delay resolution of the case.  *See Hernandez*, 2013 WL 1703529, at *4.  Indeed, Defendants' opposing memorandum contains no substantive argument regarding the specific

prejudice Defendants would suffer were Plaintiff allowed to amend the Complaint as requested. Nor is it clear how Defendants could make such an argument -- there is no indication that the substitution of Philip for Velia D'Onofrio, immediate family members of one another, would cause undue delay or expense.

With regard to the proposed changes to the substantive factual allegations underlying Plaintiffs' claims, the Court disagrees with Defendants' posture that these changes "are both numerous and extensive."  Defs.' Opp'n. at 5.  As noted previously, the changes are rather superficial and do not materially change the nature of the allegations underlying Plaintiffs' claims.  Significantly, the PAC pleads the same five causes of action as the initial Complaint.  To the extent amending the pleading would cause delay in the resolution of this case, "[m]ere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *State Teachers Ret. Bd*., 654 F.2d at 856; *Commander Oil Corp. v. Barlo Equip. Corp.*, 215 F.3d 321, 333 (2d Cir. 2000).

Lastly, the Court observes that Defendants' argument that "plaintiffs are seeking to salvage their meritless case by changing their pleadings and, therefore, their stories" and that "[t]his is the height of bad faith and should not be permitted," Defs.' Opp'n. at 5, is misplaced. "Indeed discovery often justifies a subsequent amendment to the complaint.  Even [if] it is predicated upon a different theory, an amendment should be permitted in the absence of the injection of any new issues requiring new and extensive preparation detrimental to the speedy resolution of the case and prejudicial to the defendant." *Matarazzo v. Friendly Ice Cream Corp*., 70 F.R.D. 556, 559 (E.D.N.Y. 1976) (citing *Middle Atlantic Utilities Co. v. S.M.W. Development Corp.*, 392 F.2d 380, 385-86 (2d Cir. 1968)).  Significantly, Plaintiffs' proposed amendment is *not* predicated upon a different theory and does not inject new issues into the litigation.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs' motion for leave to amend the Complaint is

GRANTED.  Plaintiffs are directed to serve and file their Amended Complaint within ten (10)

days of this Order.


**SO ORDERED.**

Dated:  Central Islip, New York
        March 15, 2018


/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge