UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
FRANCISCO RODRIGUEZ and ARISTIDES
ALFREDO DILLATORO,

                      Plaintiffs,

                      **MEMORANDUM & ORDER**
-against-                      16-CV-254 (DRH)(AKT)

RIDGE RESTAURANT, INC. d/b/a/ ALFREDO'S
PIZZERIA, DENNIS D'ONOFRIO, and PHILIP
D'ONOFRIO.
                      Defendants.
------------------------------------------------------------X

**APPEARANCES:**

**For Plaintiffs:**
Moser Law firm PC
5 E. Main Street
Huntington, New York 11743
By:    Steven J. Moser, Esq.


**For Defendants:**
Wickham, Bressler & Geasa, P.C.
13015 Main Road, PO Box 1424
Mattituck, New York 11952
By:    Eric J. Bressler, Esq.
          Nicole E. Della Ragione, Esq.

**HURLEY, Senior District Judge:**

        Plaintiffs Francisco Rodriguez ("Rodriguez") and Aristides Alfredo Dillatoro

("Dillatoro") [1] (together "Plaintiffs') commenced this action against Ridge

Restaurant, Inc. d/b/a/ Alfredo's Pizzeria ("Alfredo's"), Dennis D'Onofrio ("Dennis"),

and Philip D'Onofrio ("Philip") (collectively "Defendants") to recover, *inter alia,*

---

[1] The Court notes that while the caption (and Defendants' papers) identify the second named plaintiff as Alfredo Dillatoro, this was apparently in error and plaintiff's papers refers to him as Alfredo Villatoro. (*See* DE 61-1.) Given the absence of a motion to amend, the Court will refer to him as Dillatoro.

unpaid overtime wages and spread of hours pay under the NYLL and the FLSA. Presently before the Court is a motion by Defendants and a cross-motion by Dillatoro for summary judgment. For the reasons set forth below, Defendant's motion is granted in part and denied in part, and Dillatoro's motion is granted in part and denied in part.

## BACKGROUND

The following facts, taken from the parties' 56.1 statements, are undisputed unless otherwise noted.

Alfredo's is a pizzeria restaurant. Dennis is the president of Alfredo's and was responsible for hiring and firing of Plaintiffs; Philip was the manager, but his responsibilities did not include hiring or firing, the setting hours or pay rates, or managing the payroll.

Dillatoro was hired by Dennis in October 2014 as a prep worker at the rate of $9.00 per hour; his employment at Alfredo's began on October 20, 2014 and ended April 1, 2015. According to Defendants, when Dillatoro was hired he received and signed a disclosure statement setting forth his hourly wage and corresponding overtime rate; according to Dilllatoro he never saw the wage notice. Rodriguez was hired by Dennis to work at Alfredo's in October 2014 as a prep worker at the rate of $8.00 per hour, which rate was raised to $8.75 in January 2015. His employment ended in March 2015. At the time of his hiring and again in January 2015 he received a disclosure statement setting forth his hourly wage and the corresponding

overtime rate and signed same. While employed, Plaintiffs were generally scheduled to work from 10:00 a.m. to 10:00 p.m.

Plaintiffs and other non-managerial employees of Alfredo's were required to, and in fact did, clock in and out of work at the beginning and end of each work day by utilizing a time clock and time cards. At the end of each week, Dennis would examine the time cards and compute the amount due to plaintiffs based upon the hours worked and the appropriate hourly straight and overtime rates and note same on time cards. When the amount of weekly pay for each plaintiff was calculated such pay and the marked timecard would be placed in an envelope and given to Plaintiffs. Each plaintiff would receive the funds and sign and return the time card. The time cards for Plaintiffs reflect the time worked by Plaintiffs. Defendants contend the time cards reflect the pay due Plaintiffs. Plaintiffs concede the time cards reflect the amount they received but dispute that they reflect the amounts properly due. It is undisputed that Dennis made errors when computing overtime owed to Dillatoro. Whereas the time clocks recorded hours worked in hours and minutes, the minutes were incorrectly converted from hour and minute format into decimal format. In other words, the timecards for Plaintiffs list the hours and minutes worked for a week in decimal form utilizing the correct number of whole hours but converting the minutes to hundredths of an hour rather than whole hours and whole minutes and compensation due was computed therein. "As a mathematical fact, treating the minutes as decimals resulted in Dillatoro receiving 60% of any minutes of overtime worked shorter of a full hour." For example,

"Dillatoro's timecard for the week ending December 7, 2014 shows that he had accumulated overtime of '31:54' (or 31.9 hours). Dennis [] multiplied the Plaintiff's overtime of $13.50 per hour by 31.54 (rather than 31.9) and paid the plaintiff $425. Had Dennis . . . paid the Plaintiff for 31.9 hours of overtime, the result would have been $430.65." The timecards do not make reference to payment for spread of hours pay and do not contain the name, address, and phone number of the employer. While employed, Plaintiffs did not complain about their hours or compensation.

Defendants never furnished Dillatoro a wage notice in Spanish despite the fact that the notice indicates that his primary language is Spanish. Defendants did not furnish a copy of the timecards unless Dillatoro specifically asked for it and he never did.

Neither Dennis nor Philip tracked or recorded employee breaks or meals. Defendants did not schedule the employees one hour break time; they scheduled their own breaks. Dennis has no personal knowledge as to whether Villatoro was taking any breaks and neither he nor Philip recall speaking with Dillatoro about the meal period. According to Philip, all workers at the pizzeria took their two 15-minute breaks and a 30-minute lunch break every day; according to Dillatoro, he did not receive an uninterrupted meal period during his employment.

## RELEVANT PROCEDURAL HISTORY

Plaintiffs commenced this action on January 18, 2016 and Defendants filed their answer on May 12, 2016. On January 13, 2017, an Initial Case Management Order was entered setting forth dates for the service and responses to

interrogatories and request for documents. On March 8, 2017 Plaintiffs requested additional time to serve their discovery requests, which request was thereafter granted.

On April 21, 2017 Plaintiffs' counsel, Mr. Moser, moved to withdraw as attorney for Rodriguez on the grounds he had lost contact with his client. On May 1, 2017, Mr. Moser withdrew the motion to be relieved as counsel.

There being no indication on the docket of the progress of this case, the Court issued an order for a status report on January 28, 2019. When no status report was filed, the Court issued another order on February 11, 2019, directing the parties to file a status report. When there was no response to that order, an order to show cause was issued on February 19, 2019 directing the parties to appear in court to explain their failure to respond to the two aforementioned orders; at that court appearance, the parties were directed to obtain a new scheduling order from the Magistrate Judge.

On April 12, 1029 a new scheduling order was issued requiring, inter alia, Plaintiffs to provide responses to Defendants' discovery requests and setting May 31, 2019 as the deadline for the completion of all depositions and fact discovery. On May 22, 2019, Defendants filed a motion for discovery asserting Plaintiffs had not complied with their discovery obligations. On May 30, 2019, Judge Tomlinson denied without prejudice the motion for discovery and set August 15, 2019 as the new deadline for completion of depositions and fact discovery. On August 7, 2019, a

motion to extend the time to complete discovery was granted, setting September 20, 2019 as the close of fact discovery.

On October 11, 2019, Defendants filed a pre-motion conference letter with respect to their proposed Rule 37 motion as to Rodriguez given his failure to appear for his deposition on September 16, 2019 and noting the absence of a motion to withdraw by Mr. Moser, as well as their proposed summary judgment motion. On October 15, 2019, Plaintiffs filed a pre-motion conference letter regarding Dillatoro's proposed motion for summary judgment. In that letter, Mr. Moser also stated that Rodriguez was no longer in the United States and that he would be separately moving to withdraw and requesting that any motion to dismiss Rodriguez's case be stayed pending a decision on the motion to withdraw. On December 3, 2019, no motion to withdraw as counsel having been filed, the Court set a briefing schedule for the proposed motions. To date, no "renewed' motion has been filed by Mr. Moser to be relieved as counsel for Rodriguez. However, the papers submitted on the current motions by Mr. Moser do not address Rodriguez's claims, either affirmatively or defensively.

## DISCUSSION

### I.  Defendants' Rule 37 Motion as to Rodriguez

Before addressing the motions for summary judgment, the Court will turn first to that portion of Defendants' motion which seeks dismissal of Rodriguez' claims pursuant to Fed. R. Civ. P. 37 because he failed to appear for his deposition and discovery is now closed.

Rule 37 permits dismissal of a civil action for failure "to provide or permit discovery." Fed. R. Civ. P. 37(b)(2). Dismissal with prejudice, however, is "a harsh remedy to be used only in extreme situations, and then only when a court finds 'willfulness, bad faith, or any fault' by the non-complaint litigant." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (quoting *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir. 1990)). The factors to be considered when determining whether to dismiss an action with or without prejudice include: (1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance. *Id.* (quoting *Nieves v. City of New York*, 208 F.R.D. 531, 535 (S.D.N.Y. 2002)).

Application of the foregoing factors to the present case warrants that the dismissal of Rodriguez's claims be without prejudice. He appears to be unsophisticated , his failure to appear for deposition was a one time occurrence, and there is no indication that he was informed that his failure to appear for deposition could result in a dismissal with prejudice. Also factoring into the Court's analysis is the fact that some of the discovery delays in this matter were caused by the personal circumstance of plaintiff's counsel and not Rodriguez himself. (*See* DE 52.). In sum, the Court grants defendants' motion as to Rodriguez to the extent that his claims are dismissed without prejudice.

Having addressed the Rule 37 portion of Defendants' motion, the Court turns to the motion for summary judgment,[2] beginning with the applicable standard.

## II. Summary Judgment Standard

Summary judgment, pursuant to Rule 56, is appropriate only where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant governing law in each case determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When making this determination, a court must view all facts "in the light most favorable" to the non-movant, *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014), and "resolve all ambiguities and draw all permissible factual inferences in favor of the [non-movant]," *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). Thus, "[s]ummary judgment is appropriate [only] where the record taken as a whole could not lead a rational trier of fact to find for the [non-movant]." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (internal quotation marks omitted).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts demonstrating that there is a genuine dispute of material

---

[2] Having dismissed Rodriguez's claim pursuant to Rule 37, the Court will address the summary judgment motion only as to Dillatoro.

fact to be tried. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). The non-movant must present more than a "scintilla of evidence," *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Matsushita*, 475 U.S. at 586-87), and "may not rely on conclusory allegations or unsubstantiated speculation," *Id.* (quoting *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010).

The district court considering a summary judgment motion must also be "mindful . . . of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the "evidentiary burdens that the respective parties will bear at trial guide district courts in their determination[s] of summary judgment motions," *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). "[W]here the [non-movant] will bear the burden of proof on an issue at trial, the moving party may satisfy its burden by pointing to an absence of evidence to support an essential element of the [non-movant's] case." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014) (quoting *Brady*, 863 F.2d at 210-11) (internal quotation marks omitted). Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish his claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.' " *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587). "[A] complete failure of proof concerning an essential element of the [non-movant's] case necessarily renders

all other facts immaterial." *Crawford*, 758 F.3d at 486 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### III. Applicable Law: FLSA and New York Labor Law

#### A. The FLSA and NYLL Overtime Provisions

The FLSA provides in pertinent part:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207.

The statutory scheme for overtime purposes of the FLSA and the NYLL are essentially the same. *See Nakahata v. New York-Presbyterian Healthcare System, Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) ("The FLSA mandates that an employee engaged in interstate commerce be compensated at a rate of no less than one and one half times the regular rate of pay for any hours worked in excess of forty per week, 29 U.S.C. § 207(a)(2006); the NYLL adopts this same standard, N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 (2011 ) (incorporating the FLSA definition of overtime into the NYLL).") (footnote omitted).

#### B. Other Applicable NYLL Provisions

During the relevant period of time, NYLL provided that every employer must:

> (a) provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such

> employee, at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer . . . . Each time the employer provides such notice to an employee, the employer shall obtain from the employee a signed and dated written acknowledgement, in English and in the primary language of the employee, of receipt of this notice, which the employer shall preserve and maintain for six years.

NYLL § 195(1)(a). It also provided that an employer must:

> furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.
> (b) The commissioner shall prepare templates that comply with the requirements of paragraph (a) of this subdivision. Each such template shall be dual-language, including English and one additional language. The commissioner shall determine, in his or her discretion, which languages to provide in addition to English, based on the size of the New York state population that speaks each language and any other factor that the commissioner shall deem relevant. All such templates shall be made available to employers in such manner as determined by the commissioner;
> (c) When an employee identifies as his or her primary language a language for which a template is not available from the commissioner, the employer shall comply with this subdivision by providing that employee an English-language notice or acknowledgment;

Page **11** of **20**

NYLL § 193(3)(a). Templates are to be prepared by the commissioner and "[e]ach such template shall be dual-language, including English and one additional language," with the commissioner determining "which languages to provide in addition to English, based on the size of the New York state population that speaks each language and any other factor that the commissioner shall deem relevant." *Id.* ¶ 193(3)(b). "When an employee identifies as his or her primary language a language for which a template is not available from the commissioner, the employer shall comply with this subdivision by providing that employee an English-language notice or acknowledgment." *Id.* ¶ 193(3)(c).

Moreover, under New York law, when the spread of hours, i.e. the period of time worked in a given day, exceeds 10 hours, an employee must be paid "one hour's pay at the basic minimum hourly wage rate," in addition to his otherwise-required wages. 12 NYCRR § 146-1.6. This "spread of hours" pay includes "working time plus time off for meals plus intervals off duty." *Id*. It applies to all restaurant employees, regardless of whether they are paid at minimum wage. *Feng Chen v. Patel*, 2019 WL 2763836, at *10 (S.D.N.Y. July 2, 2019).

## IV. Dillatoro's Overtime and Spread of Hours Claim

While admitting that overtime hours were erroneously computed using whole hours and hundredths of an hour rather than the number of actual minutes, Defendants assert that "this discrepancy is more than offset by the overpayment of spread of hours pay at overtime rather than straight time rates." Spread of hours was paid at overtime rates, according to Defendants, because Dillatoro, was paid for

the one hour taken off during his twelve hour shift and this extra hour of pay constituted a spread of hours payment for days worked in excess of ten hours. ((Defs.' Mem. in Supp. (DE 59-2) at 7; Decl. of Dennis D'Onofrio (DE 60) ¶ 4; Dennis Dep. at 52-53.)

Section 162(2) of the New York Labor Law requires that employees such as Dillatoro receive a 30-minute meal period. Neither federal nor state law *requires* that the meal period be paid; however, it must be included in the hours worked (and thus the employee must be paid for it) if the employee worked through the meal period. *See Reich v. Southern New England Tel. Corp.*, 121 F.3d 58, 64 (2d Cir 1997); *accord Perkins v. Bronx Lebanon Hospital Center*, 2016 WL 6462117, at *4 (S.D.N.Y., Oct. 21, 2016); *Alonso v. 144 Ninth Gotham Pizza, Inc.*, 2016 WL 4257526, at *1 (S.D.N.Y. Aug. 10, 2016). To the extent that fifteen-minute breaks are given to an employee they are included in time worked. *See* 20 C.F.R. § 785.18; *Martin v. Waldbaum Inc.*, 1992 U.S. Dist. LEXIS 16007 (Oct. 16, 1992).

Here, it unclear whether employees were to receive a 30-minute lunch and two fifteen-minute breaks, in which case the fifteen-minute breaks are compensable, or a one hour break a day. *Compare* Defs.' 56.1 at ¶17 ("plaintiffs were afforded . . . a total of one hour for lunches and breaks") *with* Dennis Dep. at 53 ("Every single employee gets a one-hour break a day.") Additionally, there is a dispute as to whether Dillatoro did in fact take a bona fide lunch break. While Defendants assert that he did, Dillatoro says otherwise. Plaintiff's challenge to the affidavits submitted by Dennis and Philip as not based on personal knowledge need

not be addressed as the affidavits are not the only evidence submitted. At his deposition, Philip, while admitting he did not track lunch breaks testified that Dillatoro took lunch "everyday that he worked," "probably" between 1:00 and 4:00 p.m. That he could not recall the specific time Dillatoro took lunch on any specific day goes to the weight of his testimony, a consideration irrelevant on a summary judgment motion.

Assuming arguendo that Dillatoro did receive a bona fide lunch period (whether 30 minute or one hour), the question then becomes whether Defendants may offset the amount paid to him for this period as against the spread of hours payment due him. That depends on whether defendants treated meal breaks as compensable time. *See Smiley v. E. I. DuPont De Nemours & Co.*, 839 F.3d 325, 331 (3d Cir. 2016) ("To the extent that [] hours are regarded as working time, payment made as compensation for these hours obviously cannot be characterized as "payments not for hours worked."); *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901. 913 (9th Cir. 2004) (Under § 7(h) of the FLSA, if compensation for the paid lunch period is excluded from the regular rate of pay, then it cannot be used to offset overtime compensation); *Shanfi Li. V. Chinatown Take-Out, Inc.* 2018 U.S. Dist. LEXIS 219941, 22-23 (S.D.N.Y. Dec. 4, 2018) ("Defendants cannot treat meal breaks as compensable time during Plaintiffs' employment, . . . then claim *ex post facto* that they may offset their liability using the same."), *recon. denied*, 2019 WL 3715086 (Aug. 7, 2019), aff'd, 812 F. App'x 49 (2d Cir. 2020).

As the *Smiley* Court stated:

> "Hours worked" includes all hours worked "under [an employee's] contract (express or implied) or under any applicable statute." 29 C.F.R. § 778.315. In general, "hours worked" includes time when an employee is required to be on duty, but it is not limited to "active productive labor" and may include circumstances that are not productive work time. See 29 C.F.R. § 778.223. Employers have a measure of flexibility in determining whether otherwise non-productive work time will be considered "hours worked" under the FLSA. For instance, meal periods—while not necessarily productive work time—may nevertheless be considered "hours worked" under the Act. Id. ("Some of the hours spent by employees ... in meal periods ... are regarded as working time and some are not. ... To the extent that those hours are regarded as working time, payment made as compensation for these hours obviously cannot be characterized as 'payments not for hours worked.' "). The decision to treat otherwise non-productive work time as "hours worked" is fact dependent. Relevant here, the regulations provide that "[p]reliminary and postliminary activities and time spent in eating meals between working hours fall into this category [of work that an employer may compensate his employees for even though he is not obligated to do so under the FLSA.] The agreement of the parties to provide compensation for such hours may or may not convert them into hours worked, depending on whether or not it appears from all the pertinent facts that the parties have agreed to treat such time as hours worked." 29 C.F.R. § 778.320.

839 F.3d at 331.

Here, there is a question of fact as to whether Defendants treated the lunch period as time worked. As set forth in Defendants' 56.1 statement, Dillatoro was required to clock in and out of work at the beginning and end of each work day. At the end of the week Dennis would examine the time cards and compute the amount due to Dillatoro based on the hours worked and the appropriate hourly straight and overtime rates and note same on timecards. (Defs.' 56.1 ¶¶ 13-14). The time cards reflect the "time worked." (*Id.* at ¶ 15; Dennis Dep. at 51 (time cards demonstrate Dillatoro's "exact work hours").) By way of example, the time cards submitted for

the week ending 10/26 shows "hours worked" as 12 hours three minutes on 10/20; 11 hours, 55 minutes on 10/21; 12 hours on 10/23; 12 hours, four minutes on 10/24; 12 hours, 8 minutes on 10/25 and eleven hours, 24 minutes on 10/26. (Dennis Donofrio Declar. Ex. E.) Next to the "hours worked" is column entitled "Accumulated" subdivided into "hours" and "overtime." The hours worked are initially added to the "hours" sub-column. Once the hours worked in the week exceeds 40, the "hours" sub-column stays at 40, with any excess hours over 40 added to the "overtime" subcolumn in a running total. The handwriting below calculates the amount due as:     "40x9 [=] 360"

"31.34 [x] 13.5 [=] 423

783

Most of the timecards for Dillatoro follow the same pattern.[3] There is nothing on the timecards that specifically references spread of hours pay. According to Dennis' deposition testimony reading spread of hours pay: "He [Dillatoro] did not clock out on his breaks and it was our understanding that he would be paid the additional hour [for spread of hours] in overtime the entire week, so the six days that he worked instead of him clocking out for his break every single day, he stayed clocked in which assured him to get paid." (Dennis Dep. at 52.)

---

[3] Three timecards submitted for Dillatoro are different. For these timecards in the handwritten notes, it appears that three hours were removed from the total of overtime hours and paid at the regular rate. For example, the handwritten notes for time timecards for the week ending 11/2 are as follows:
40 x 9          360 wage
3x9             27 break
28.32x 13.50   382 OT
                770
Neither party addresses the import of these three timecards.

Page **16** of **20**

The foregoing issues of fact precludes both Defendants' and Plaintiffs' motions for summary judgment on Dillatoro's claims for overtime and spread of hours pay. Accordingly the motions are denied.[4]

## V.     Dillatoro's Wage Notice and Wage Statement Claims

New York Labor Law §§ 195(1) and (3) require that an employer provide employees with wage notice, detailing such items as the dates of their hiring, their rates of pay, and wage statements, listing, inter alia, the dates of work covered by the compensation paid, together with the name, address and phone number of the employer, respectively. Penalties for violations of the foregoing provisions are contained in § 198(1-b) and (1-d) respectively. However, it is an affirmative defense that "the employer made complete and timely payment of all wages due . . . ."  (NYLL §§ 198(1-b), (1-d).

According to Defendants, no recovery may be had under §§ 198(1-b) and (1-d) because Alfredo's made timely payments of all amounts due as wages.  Plaintiff responds that Defendants are precluded from raising this defense as this affirmative defense was not set forth in their answer. However, as Defendants point out whether full payment was made for all wages due was put in issue by the denials in their answer. Thus, Plaintiff can claim no surprise and Defendants may rely on this affirmative defense to the extent that they are found to have paid all wages due Dillatoro.

---

[4] Given the Court's denial of Dillatoro's motion for summary judgment on his wage claims, the Court need not address his arguments regarding damages and interest.

That the Court has concluded that there are issues of fact as to whether all amounts due as wages to Dillatoro were paid, the motions for summary judgment on the wage notice and wage statement claims are denied.

## VI. Dillatoro's Claim Against the Individual Defendants

Personal liability may be imposed on employers for wage and hour violations under both the FLSA and NYLL. *Ansoumana v. Gristede's Operating Corp.,* 255 F. Supp. 2d 184, 192 (S.D.N.Y. 2003). Under the FLSA, "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "The Supreme Court has emphasized the 'expansiveness' of the FLSA's definition of employer." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (quoting *Falk v. Brennan*, 414 U.S. 190, 195 (1973)); *see also Ansoumana*, 255 F. Supp. 2d at 192. The Second Circuit treats the term "employer" for FLSA purposes as a "flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 141–42 (2d Cir. 2008).

In this Circuit an "economic reality" test is used to determine whether any particular individual is an employer. *See Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999). The four-factor test considers "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* (quoting *Carter v. Dutchess Community College,* 735 F.2d 8, 12 (2d Cir. 1984)).

Here, Defendants move for summary judgment on the issue of Phillip's individual liability. Plaintiff moves for summary judgment on the issue of Dennis' liability.

In support of their motion, Defendants point out that as Philip did not have the power to hire or fire or set wages, was not responsible for the computation or payment of wages, and was neither a shareholder or officer, he cannot be liable. Plaintiff does not contest the foregoing facts. Indeed, Plaintiff does not even address this portion of Defendants' motion, thereby abandoning this claim. The motion for summary judgment on Dillatoro's claims against Philip is granted and Philip is dismissed as a defendant.

Plaintiff points to the absence of any dispute that Dennis had the power to hire and fire, determined the rate and method of payment, and maintained employment records. Defendants do not contest the foregoing facts and indeed do not even address this issue. Accordingly, summary judgment is granted in favor of Dillatoro on the issue of Dennis' individual liability for any wage violations by Alfredo's.

### VII. Defendants' Remaining Argument

Defendants raise a few additional arguments, none of which need detain the Court long.

First, they argue that plaintiff's claims for liquidated damages with respect to overtime may only be granted under either the FLSA or the NYLL. While this

argument is premature at this juncture, it is undisputed and correct. *See Rana v. Islam*, 887 F.3d 118, 122 (2d Cir. 2018).

Defendants' also maintain that there is no genuine issue of fact that Dillatoro's hourly wage was $9.00 and his dates of employment were October 20, 2014 to April 1, 2015. They are correct that these facts are undisputed.

## CONCLUSION

For the reasons set forth above, Defendants' motion is granted to the extent that Rodriguez' claims are dismissed without prejudice and Dillatoro's claims against Philip are dismissed; it is otherwise denied. Dillatoro's motion is granted to the extent that Philip is individually liable for any wage violations by Alfredo's, but otherwise denied.

**SO ORDERED.**

Dated: Central Islip, New York     s/ Denis R. Hurley
       December 29, 2020             Denis R. Hurley
                                                    United States District Judge